UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re: ) | |
| ) | |
| ANDRE L. REED, ) | Case No. 16-18947-JGR |
| SSN: xxx-xx-3343 ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |

**ORDER**

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") draws a critical distinction between whether the debts of a particular debtor are primarily consumer debts or primarily business debts in a Chapter 7 case. If the debts are primarily consumer debts in a Chapter 7 case, the court may dismiss such a case if the granting of Chapter 7 relief would be an "abuse" of the Bankruptcy Code. If the debts are primarily business debts, the abuse analysis is not applicable.

The threshold issue presented in this case is whether a mortgage encumbering a debtor's 50% interest in a home, for which the debtor is not personally liable, is still a "debt" for the purpose of calculating whether the debtor has primarily consumer debts.

The Bankruptcy Code defines "debt" and "claim." Generally, the debtor owes a debt to the creditor and the creditor holds a claim against the debtor. Are the words "debt" and "claim" as used in the Bankruptcy Code synonymous?

**Jurisdiction**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This matter is a core proceeding under 28 U.S.C. § 157 (b)(2)(A) and O). Venue is proper in this District pursuant to 28 U.S.C.§ 1409(a).

1

**Procedural Background**

Andre Reed, a medical doctor ("Dr. Reed") filed for relief under Chapter 7 on September 9, 2016. On Schedule A, he identified a fifty percent interest in certain real property, 917 S. Josephine Street, Denver, Colorado (the "Property"), valued at $1,774,000, with the value of the fifty percent portion he owned as $887,000. On Schedule D, he identified the amount of the mortgage on the Property as $1,858.681.

The United States Trustee ("UST") moved to dismiss Dr. Reed's case as an abusive case under §§ 707(b)(1), (2) and (3)[1] ( the "Motion"), asserting the mortgage on the Property, a secured claim in the case, was also a "debt" for purposes of determining whether Dr. Reed had primarily consumer debts, citing numerous cases and legislative history in support of that position discussed below. The UST further argues under the specific facts of this case, Dr. Reed's case should be dismissed as abusive. If Dr. Reed has primarily consumer debts, the analysis of whether his case is an "abuse" must be undertaken.[2]

In response, Dr. Reed argues the mortgage is a "claim" but not a "debt," because in § 101(12), the Bankruptcy Code defines a "debt" as "liability on a claim," and Dr. Reed was not personally liable for the mortgage. Dr. Reed acknowledges the mortgage is a "claim" against the estate, but contends that because he is not personally liable for the mortgage, the mortgage is not a "debt" within the plain language of the Bankruptcy Code. Dr. Reed reasons: "Under the plain language of the statute, § 707(b) looks to the nature and amount of debts for which the debtor is liable, not to claims against the debtor's estate. Accordingly, because the debtor is not personally liable for the mortgage on his residence, and his business debt therefore outweighs his consumer debt, the debtor is a business debtor, and the 'abuse' provisions of §707(b) are not applicable."[3]

Dr. Reed further contends other sections of the Bankruptcy Code support the argument that a 'debt' is intended to refer to *in personam* liability on a claim, citing to § 727(b) as referring to the discharge of "debts" and any "liability on a claim that is determined under section 502." Because a discharge, under § 727(a), discharges only *in personam* liability, Debtor asserts "it is evident that 'debt' is intended to refer to personal liability, not a claim against property." Dr. Reed also argues the absence of the word "debt" in 11 U.S.C. § 506 is indicative that "debt" and "claim" are not interchangeable terms.

Finally, Dr. Reed relies on statutory construction, noting:

In interpreting statutory provisions, the court will construe the language of the Bankruptcy Code according to its plain meaning. *Standiferd v. United States (In re Standiferd)*, 641 F.3d 1209, 1213 (10th Cir. 2011). In determining the plain meaning of the statute, the court will generally look at the particular statutory language at issue as well as the language and design of the statute as whole. If the language is clear and unambiguous, the plain meaning of the statute controls. *Id*.

---

[1] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.
[2] The parties have briefed the "abuse" issue but the Court has only focused on the threshold issue.
[3] Dkt. 25, ¶ 18.

According to Dr. Reed, the plain language of § 707(b)(l) is clear and unambiguous. Section 707(b)(l) provides that the court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts." The Bankruptcy Code defines a "debt" as "liability on claim." § 101(12). "Accordingly, under the plain meaning of § 707(b), the operative measure of whether the debtor has primarily consumer debts is those claims for which the debtor is personally liable."[4]

The Court set the matter for hearing, and, after hearing argument, requested further briefing on the issue. The Court has reviewed the recording of the hearing, the briefs and the record.

## Factual Background

Dr. Reed claimed his debts were primarily consumer debts in his Petition. In his initial filing, Dr. Reed scheduled assets in the total amount of $1,019,945, of which $887,000 was the value of his fifty percent interest in the Property. He listed liabilities in the total amount of $2,336,056, of which $1,858,681 was the amount of the mortgage encumbering the Property. After the UST moved to dismiss his case, Dr. Reed amended his Petition and Schedules A and B to show the value of the Property as "zero," with the current value of the portion he owned as "zero," and noted: "Debtor owns 50% interest: Property valued at $1,774,000; Property is over-encumbered by mortgage in the amount of $1,858,681, for which the Debtor is not personally liable."[5] The mortgage is almost 80% of the total scheduled debt in this case.

Prior to the bankruptcy filing, Dr. Reed experienced certain business losses necessitating the closure of two former medical practices. Dr. Reed has joined a new medical practice but has a substantial buy-in expense and has to wait for the insurance reimbursement stream to flow. These circumstances negatively impact his current income.

Dr. Reed is married. His wife is also a medical doctor. His wife did not file for bankruptcy relief. Dr. Reed and his non-filing spouse ("Spouse") purchased the Property in 2003. He, his Spouse, and two minor children live in the Property. The warranty deed is not in the record, but Dr. Reed represents the Property is "jointly owned."[6] The original note and deed of trust also are not in the record, but according to the UST, the purchase was originally financed by Guaranty Bank and Trust. In 2015, Dr. Reed and his Spouse refinanced the Property through Wintrust Mortgage. The Wintrust Mortgage note is secured by both Dr. Reed's and his Spouse's interest in the Property, but only his Spouse is personally liable for the note.[7] The Wintrust Mortgage note was subsequently purchased by the servicer of the note, Chase Bank.

---

[4] Dkt. 40, p.2.
[5] Dkt. 24.
[6] Dkt. 34, ¶ 3.
[7] This note is not in the record, but Dr. Reed asserts "he did not execute a promissory note for the mortgage." Dkt. 34, ¶ 5. Both parties agree Dr. Reed is not personally liable on the note.

3

The Wintrust Mortgage Deed of Trust on the Property provides:

> Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) Is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's Interest in the Property under the terms of this Security Instrument: (b) is not personally obligated to pay the sums secured by this Security Instrument . . . .

Dkt. 36, Ex. A.

Thus, the Wintrust note is secured by Dr. Reed's interest and his Spouse's interest in the Property. However, only the Spouse is personally liable on the Wintrust note.

### Discussion

The UST has the burden to prove that more than half of Dr. Reed's debts are consumer debts. *In re Cribbs,* 387 B.R. 324, 332-33 (Bankr. S.D. Ga. 2008). The issue presented is dispositive of the UST's Motion to Dismiss under § 707(b)(l), which provides:

> [T]he court "may dismiss a case filed by an individual debtor under this chapter [7] whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

If the mortgage is not considered a "debt," it is also not a "consumer debt" for purposes of § 707(b)(1), leaving Dr. Reed with primarily business, rather than consumer, debts.[8] If a debtor has primarily business, rather than consumer, debts, the provisions of § 707(b) do not apply. The parties have not argued that the mortgage, if it is a "debt," is a business debt.

The Bankruptcy Code defines the words in question. The term "primarily consumer debts" means a "debt incurred by an individual primarily for a personal, family, or household purpose."[9] The term "debt" is a "liability on a claim."[10] The term "creditor" is "an entity that has a claim against the debtor."[11] The term "claim" is a "right to payment" or a "right to an equitable remedy,"[12] and the term "claim against the debtor" includes a claim against property of the debtor.[13]

---

[8] Dr. Reed attaches an analysis of business and consumer debt as Exhibit A to his Response at docket #25. Without including the mortgage, his consumer debt is $89,474.64, and his business debt is $387,899.78.
[9] § 101(8).
[10] § 101(12).
[11] § 101(10).
[12] § 101(5)
[13] § 102(2).

4

A home mortgage is a "consumer debt." *In re Inghilterra*, 2012 WL 1137008 (Bankr. D. Colo. 2012); *In re Cohen*, 246 B.R. 658, 662 (Bankr. D. Colo. 2000); *Maynard v. Cannon*, 401 Fed Appx. 389, 394 (10th Cir. 2010). Dr. Reed has not asserted the mortgage encumbering the Property is not a consumer debt.

In *Johnson v. Home State Bank,* 501 U.S. 78 (1991), the Supreme Court held that Congress intended the broadest definition of the word claim available. It ruled that since § 101(5) defines claim as a "right to payment" and a "right to an equitable remedy" the word means, "nothing more than an enforceable obligation." *Id.* at 83. The Court recognized the concepts of *in personam* liability and *in rem* liability and stated that even after *in personam* liability has been extinguished by a bankruptcy discharge, the creditor still retains a "right to payment" from the proceeds of the sale of the debtor's property. *Id.* at 84. This is the reason debtors receive a discharge of "debts" in a bankruptcy case, meaning *in personam* or personal liability on a claim is discharged. Thus, *Johnson* stands for the principle that a nonrecourse debt secured by the debtor's property is a claim if it is enforceable against either the debtor or the debtor's property. Since a debt is a liability on a claim, a non-recourse loan secured by the debtor's property is a debt to the extent of the creditors' interest in the encumbered property. *In re Sandrin,* 536 B.R. 309, 313-14 (Bankr. D. Colo. 2015).

In *Johnson*, the debtor filed a successful Chapter 7 case and received a discharge of his personal liability on certain notes secured by his farm. When the bank sought to foreclose on the farm after the Chapter 7 case was concluded, the debtor filed a Chapter 13 case. The bankruptcy court confirmed the debtor's plan to pay the bank's debt in installments but the district court reversed, ruling that the Bankruptcy Code does not allow a debtor to include in a Chapter 13 plan a mortgage used to secure an obligation for which personal liability has been discharged in a prior Chapter 7 case. The Supreme Court held that the mortgage lien survived the debtor's chapter 7 discharge of his personal liability (*in personam*) and was a "claim" subject to inclusion in the Chapter 13 plan. It reasoned that the term "debt" has a meaning coextensive with that of "claim" citing the clear and unambiguous legislative history. *See id.* at 83, n. 5.

The Tenth Circuit followed *Johnson* and held a debt arose when a nonrecourse deed of trust was executed in the case of *In re Perma Pacific Prop.,* 983 F. 2d. 964, 967 (10th Cir. 1992). *Perma Pacific* specifically states the terms "debt" and "claim" are coextensive, a debtor owes a debt to a creditor and a creditor holds a claim against the debtor. In that case, the Tenth Circuit held: "[t]he Bankruptcy Code definitions express congressional intent that the terms 'debt' and 'claim' are "coextensive, a creditor has a claim against the debtor; the debtor owes a debt to the creditor." *Id.* at 967 (citing *Davenport*, 495 U.S. at 559).

The issue in *Perma Pacific* was whether a deed of trust given by a Chapter 11 debtor to a creditor of the debtor's parent, was on account of "antecedent debt" of the debtor, and could be avoided as a preferential transfer. Thus, although the debtor had no personal lability for the underlying obligation, the Tenth Circuit Court of Appeals found the security interest was an enforceable obligation of the debtor and created a right to payment, and therefore the deed of trust was on account of "antecedent debt" of the debtor. The Tenth Circuit found the deed of trust was a debt measured by the extent of the value of the security.

5

The amount of the claim in a nonrecourse mortgage scenario is limited to the value of the estate's interest in the property securing the mortgage. Here, since Dr. Reed's half- interest in the Property is valued at approximately $825,000, half of the estimated value of the Property, the secured claim is $825,000. This amount, classified as a consumer debt, is enough to make this case one involving "primarily consumer debt" since Dr. Reed's business debts are approximately $400,000.

This view is shared in other jurisdictions. The Fifth Circuit Court of Appeals held that a nonrecourse obligation was a "debt" under the Bankruptcy Code to determine the debtor's eligibility for Chapter 12 in the case of *In re Lindsey,* 995 F.2d 626 (5th Cir. 1993). The court followed *Johnson* and stated the creditor's right to act against collateral is a "right to an equitable remedy" for the debtor's breach of obligation. *Lindsey* also cited the legislative history that the words debt and claim are coextensive and also found support in § 102(2), holding that the Bankruptcy Code explicitly incorporates nonrecourse loans as claims in that section.

In *Lindsey*, the debtor made the same argument Dr. Reed makes here: that because § 101(12) defines "debt" as "liability on a claim," and the debtor had no personal liability on a note, the note should be considered a "claim" but not a "debt" under the Bankruptcy Code. The Fifth Circuit disagreed, noting as follows:

> The Supreme Court has determined that under the plain language doctrine, there is no distinction between "debt" and "claim" for the purpose of the Bankruptcy Code:
>
>> Our construction of the term "debt" is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself.... [T]he Bankruptcy Code defines "debt" as a "liability on a claim." This definition reveals Congress' intent that the meanings of "debt" and "claim" be coextensive.

*Lindsey*, 995 F.2d at 628 (*citing Davenport*, 495 U.S. at 557-58; *Johnson*, 501 U.S. at 83, n. 5.

The *Lindsey* court also observed:

> The legislative history of the Code further weakens Lindsey's contention that "debt" and "claim" are distinguishable: "The terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 310 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 23 (1978). Because FDIC undeniably has a "claim" against Lindsey, as established above, the FDIC note constitutes part of Lindsey's "debt."

*Id.*

*Lindsey* involved a family partnership engaged in farming. Its partners executed a non-recourse obligation to the bank. The Federal Deposit Insurance Corporation ("FDIC") took over

6

the bank and foreclosed. Lindsey filed a Chapter 12 bankruptcy case. The FDIC moved for relief from stay and to dismiss the case contending that Lindsey was not eligible for Chapter 12 because he had debt in excess of $1,500,000. If the FDIC note was a debt, then Lindsey would not be eligible for Chapter 12 relief. The Fifth Circuit included the nonrecourse obligation as a debt and affirmed dismissal of the case due to ineligibility.

The *Lindsey* holding does not appear to be limited to Chapter 12 cases, as the court also noted as follows:

> Lindsey attempts to distinguish *Davenport* and *Johnson* on the grounds that neither specifically applies to Chapter 12 eligibility. However, the Code defines "claim" and "debt" for the purposes of the entire title, not individual sections. Chapter 12 itself does not redefine either term for the sake of its eligibility requirements. We accordingly reject Lindsey's argument.

*Id.* at 628-629.

The bankruptcy court for the District of Kansas ruled that a nonrecourse mortgage was a consumer debt in the case of *In re Bryson,* 2007 WL 2219114 (Bankr. D. Kan. 2007). In *Bryson*, the Kansas bankruptcy court was faced with the same issue presented here; i.e., "the narrow issue . . . [of] whether, even though Debtor has no personal liability on a note secured by her residence, the lien against the Debtor's residence is included in calculating the Debtor's aggregate 'consumer debt' for purposes of the United States Trustee's Motion to Dismiss pursuant to § 707(b)."

The court answered that question in the affirmative*:*

> [T]he Court holds that *in rem* debts are included when applying the condition of § 707(b) that the UST may move to dismiss a case for substantial abuse only if the Debtor's debts are primarily consumer debts. In this case, where on the date of filing the Debtor had no *in personam* liability on the . . . note secured by a mortgage on the Residence but owned the Residence in joint tenancy with her husband and had executed a mortgage securing her husband's obligation, the extent of the Debtor's *in rem* liability did not exceed the value of her interest in the Residence. Debtor's ownership of the Residence as a joint tenant gave rise to a presumption that she had a 50% interest in the Residence, but this presumption is rebuttable, with Debtor having the burden of proof on the issue.[14]

*Bryson* at *5.

The Eighth Circuit Bankruptcy Appellate Panel held that funds obtained by a debtor to finance a home constituted consumer debt even though the debtor did not sign two promissory notes evidencing the debt in *In re Lapke,* 428 B.R. 839 (8th Cir. BAP 2010). In *Lapke*, the court held that funds obtained by debtor to finance or refinance his home constituted "consumer debt"

---

[14] In the instant case, Dr. Reed has stated in his schedules that he has a 50% ownership interest in the Property.

7

within the meaning of the Bankruptcy Code, even though debtor did not sign two promissory notes and one associated deed of trust evidencing the debt. The *Lapke* court specifically noted:

> The Debtor's argument hinges on a mere technicality-his failure to sign certain loan documentation. According to the Debtor, his failure to sign two promissory notes secured by his home and one associated deed of trust evidence a lack of volition, which he claims to be a requirement for a consumer debt. We disagree with the Debtor's position. The Debtor's volition, or lack thereof, is not determinative under the facts of this case.
>
> First, the facts show that, regardless of whether he signed the loan documentation, the Debtor intended to obtain funds from Wells Fargo to finance or refinance his home. Next, the Debtor cannot escape the fact that the amounts owed under Notes 1 and 2 constitute claims against the Debtor since they are claims against his property and the associated debts were incurred, whether by the Debtor or his wife or both of them, for personal, family or household purposes.

*Lapke* at 843-44 (internal citations omitted).

### Analysis

Dr. Reed's argument is creative, but finds little, if any, support in the statute, legislative history or case law. This Court is bound by Supreme Court and Tenth Circuit precedent holding that the terms "debt" and "claim" are "coextensive." The term "coextensive" means "equal or coincident in space, time or scope." *The Random House College Dictionary* 260 (Rev. Ed. 1980). The Court does recognize Dr. Reed's precise argument does not directly contradict this precedent, because Debtor's argument is that "debt" equals "*liability* on a claim," pursuant to the plain language of § 101(12) (emphasis added). However, in *Lindsey*, the Fifth Circuit reasoned as follows:

> The Code defines "debt" as "liability on a claim," not "personal" liability on a claim . . . . "Personal liability" is a subcategory of "liability." Although a nonrecourse note stipulates no personal liability, it does impose a legal obligation. If the maker of the note fails to meet that obligation, the note holder has a remedy in the form of action against the collateral specified for the loan. Despite the fact that the remedy is limited, assuming the note is valid, it is legally enforceable.

*Lindsey*, 995 F.2d at 629.

This Court agrees with this reasoning, and the analysis in the *Bryson* and *Lapke* cases, which are factually on point. The approach is also consistent with a case from this Court construing nonrecourse debt under § 109(e). In the case of *In re Lower*, 311 B.R. 888 (Bankr. D. Colo. 2004), the court determined the eligibility analysis for Chapter 13 eligibility under § 109(e) included the value of a debtor's interest in property, even where an affiliate had the liability on the debt.

8

In this case, therefore, the Court finds that the mortgage on the Property is a "debt" for the purposes of determining whether Dr. Reed has primarily consumer debts under 11 U.S.C. § 707(b).

## Conclusion

For the foregoing reasons, it is ORDERED that this case is subject to the dismissal provisions of §707(b).[15] The UST moved for dismissal on several grounds, and advised the Court an evidentiary hearing will be necessary to resolve the remaining issues. The Court will set a status and scheduling conference by separate order.

Dated this 25th day of April, 2017.

BY THE COURT:

Joseph G. Rosania, Jr.
United States Bankruptcy Judge

---

[15] Based on the record, Debtor is not eligible to be a debtor in Chapter 13, pursuant to the debt limits contained in § 109(e). Thus, conversion, rather than dismissal, is not appropriate, unless the Debtor consents to conversion to Chapter 11.

9